# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

MOHEMP TRADE ASSOCIATION,   )
LIFTED LIQUIDS, INC., and   )
MNG 2005, INC.,   )
   )
   Plaintiffs,   )
   )
v.   )   Case No. _____
   )
MIKE KEHOE, in his official   )
capacity as Governor of Missouri,   )
   )
CATHERINE HANAWAY, in her   )
official capacity as Attorney General   )
of Missouri, and   )
   )
SARAH WILSON, in her official   )
Capacity as Director of the Missouri   )
Department of Health and Senior   )
Services,   )
   )
   Defendants.   )

## **COMPLAINT**

This lawsuit challenges the validity and enforceability of Missouri House Bill 2641 ("HB 2641"),[1] a legislative act that attempts to restrict and regulate the production and sale of hemp and hemp products in ways that violate the United States Constitution and federal statutes.

---

[1] A true and correct copy of HB 2641 is attached hereto as **Exhibit A**.

1. In 2018, Congress decriminalized hemp and allowed states to regulate hemp production pursuant to federally approved state plans.

2. In that enactment, Congress defined "hemp" and expressly forbade states from interfering with the interstate commerce of hemp. This resulted in a robust market for hemp products in Missouri and throughout the country.

3. In 2025, Congress enacted amendments to the provisions of law regulating hemp, which are set to take effect on November 12, 2026. *See* Pub. L. 119-37, Nov. 12, 2025, 139 Stat. 508. These amendments alter the definition of "hemp" and—among other things—exclude certain "hemp-derived cannabinoid products" from that definition.[2]

---

[2] The term "hemp" does not include:

(i) any viable seeds from a Cannabis sativa L. plant that exceeds a total tetrahydrocannabinols concentration (including tetrahydrocannabinolic acid) of 0.3 percent in the plant on a dry weight basis; or

(ii) any intermediate hemp-derived cannabinoid products containing—
  (I) cannabinoids that are not capable of being naturally produced by a Cannabis sativa L. plant;
  (II) cannabinoids that—
    (aa) are capable of being naturally produced by a Cannabis sativa L. plant; and
    (bb) were synthesized or manufactured outside the plant; or
  (III) more than 0.3 percent combined total of—
    (aa) total tetrahydrocannabinols (including tetrahydrocannabinolic acid); and
    (bb) any other cannabinoids that have similar effects (or are marketed to have similar effects) on humans or animals as a tetrahydrocannabinol (as determined by the Secretary of Health and Human Services); or

(iii) any intermediate hemp-derived cannabinoid products which are marketed or sold as a final product or directly to an end consumer for personal or household use; or

2

4. Nonetheless, other hemp-derived cannabinoids, such as CBD, will continue to meet the definition of "hemp" in 7 U.S.C. § 1639o after the amendments go into effect on November 12, 2026. Accordingly, it will remain legal under federal law to sell such products.

5. HB 2641 overhauls Missouri's regulation of hemp and hemp-derived cannabinoid products, including creation of the "Intoxicating Cannabinoid Control Act," § 195.900, RSMo. *See* Ex. A.

6. While HB 2641 is difficult to parse—due to its use of poorly written, interrelated statutory definitions—it appears to have the practical effect of treating all hemp-derived cannabinoid products as "marijuana" under Missouri law and subjecting them to the regulatory framework for marijuana set forth in Article XIV of the Missouri Constitution.

---

(iv)    any final hemp-derived cannabinoid products containing—
    (I)    cannabinoids that are not capable of being naturally produced by a Cannabis sativa L. plant;
    (II)    cannabinoids that—
        (aa)    are capable of being naturally produced by a Cannabis sativa L. plant; and
        (bb)    were synthesized or manufactured outside the plant; or
    (III)    greater than 0.4 milligrams combined total per container of—
        (aa)    total tetrahydrocannabinols (including tetrahydrocannabinolic acid); and
        (bb)    any other cannabinoids that have similar effects (or are marketed to have similar effects) on humans or animals as a tetrahydrocannabinol (as determined by the Secretary of Health and Human Services).

Pub. L. 119-37, Nov. 12, 2025, 139 Stat. 508.

3

7. Under HB 2641, it appears that the cultivation, production, manufacturing, testing, transportation, and retail sale of all hemp-derived cannabinoid products in Missouri must be conducted by entities licensed to sell marijuana by the Missouri Department of Health and Senior Services ("DHSS").

8. That would make it illegal to purchase or sell hemp-derived cannabinoid products (including those that meet the federal definition of "hemp") at any location other than a Missouri-marijuana licensed dispensary facility – facilities that can sell only products that are entirely cultivated and manufactured in Missouri.

9. If this is what HB 2641 means, then it discriminates against interstate commerce by insulating Missouri businesses making hemp-derived cannabinoid products from out-of-state competition. It would also violate express statutory preemption provisions.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, in that this action arises under federal law and seeks redress for the deprivation of rights secured by the Fourteenth Amendment to the Constitution of the United States.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that all Defendants reside in this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

12. Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

## PARTIES

13. Plaintiff MoHemp Trade Association is a membership organization with the mission to support and expand Missouri's hemp industry through advocacy, education, and expert business guidance.

14. Members of the MoHemp Trade Association manufacture and sell intermediate and final hemp-derived cannabinoid products in Missouri.

15. The interests MoHemp Trade Association seeks to protect by filing this lawsuit are germane to the Association's purpose of supporting and expanding Missouri's hemp industry.

16. No claim asserted or relief requested requires the participation of any individual member of the MoHemp Trade Association.

17. Plaintiff Lifted Liquids, Inc., d/b/a Urb, is a Kenosha, Wisconsin based company that manufactures, distributes, and sells final hemp-derived cannabinoid products into and through Missouri.

18. Plaintiff MNG 2005, Inc., is a St. Louis, Missouri based company that operates fifty-five stores that sell hemp-derived products in five states, including twelve stores in Missouri.

5

19. MNG 2005, Inc., manufactures and sells final hemp-derived cannabinoid products.

20. Defendant Mike Kehoe is the Governor of Missouri. Governor Kehoe signed HB 2641. He is tasked with ensuring all laws are executed. Mo. Const. art. IV, § 2.

21. Defendant Catherine Hanaway is the Attorney General of Missouri. She is Missouri's chief legal officer and is tasked with enforcing HB 2641. *See* Ex. A at 14.

22. Defendant Sarah Wilson is the Director of DHSS. DHSS is the state agency vested with oversight of Missouri's marijuana businesses. *See* Mo. Const. art. XIV, §§ 1-2. DHSS will also be tasked with regulating hemp-derived cannabinoid products. *See generally* Ex. A.

## THE CANNABIS PLANT

23. *Cannabis sativa L.* is a plant commonly known as "hemp" or "marijuana."

24. Hemp and marijuana are distinct cultivars of the same plant.

25. The cannabis plant produces at least 113 different compounds referred to as "cannabinoids." One cannabinoid found in the cannabis plant is tetrahydrocannabinol ("THC"). THC has several isomers (distinct arrangements of the same molecular compounds), including delta-9 ("delta-9 THC"), the principal

6

psychoactive chemical in cannabis. Other THC isomers include delta-8 ("delta-8 THC") and delta-10 ("delta-10 THC").

26. Another cannabinoid found in the cannabis plant is cannabidiol ("CBD"). CBD is a non-psychoactive, non-intoxicating cannabinoid that does not produce the "high" associated with THC.

## FEDERAL LAW GOVERNING HEMP

27. In 2018, Congress enacted and the President signed the Agriculture Improvement Act of 2018, Pub. L. 115-334 (the "2018 Farm Bill").

28. The 2018 Farm Bill decoupled hemp from marijuana under the federal Controlled Substances Act and exempted cannabinoids derived from hemp from the definition of marijuana.

29. The 2018 Farm Bill defined "hemp" to include "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1).

30. Consequently, federal law currently treats all derivatives of the Cannabis sativa L. plant with a delta-9 THC concentration of 0.3 percent or less on a dry weight basis as "hemp."

31. The 2018 Farm Bill contains an express preemption provision stating:

7

(a) RULE OF CONSTRUCTION. – Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by [7 U.S.C. § 1639o])) or hemp products.

(b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS. – No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by [7 U.S.C. § 1639o]) through the State or the territory of the Indian Tribe, as applicable.

2018 Farm Bill § 10114.

32.     The 2018 Farm Bill also contains an anti-preemption provision, stating:

Nothing in this subsection preempts or limits any law of a State or Indian tribe that—

(i) regulates the production of hemp; and

(ii) is more stringent than this subchapter.

7 U.S.C. § 1639o(a)(3)(A).

33.     In November 2025, Congress enacted amendments to 7 U.S.C. § 1639o, which are scheduled to go into effect on November 12, 2026 (the "2025 Farm Bill Amendments"). *See* Pub. L. 119-37, Nov. 12, 2025, 139 Stat. 508.

34.     The 2025 Farm Bill Amendments will alter the federal definition of "hemp."

35.     First, the 2025 Farm Bill Amendments generally redefine "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof

and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, *with a total tetrahydrocannabinols concentration (including tetrahydrocannabinolic acid)* of not more than 0.3 percent on a dry weight basis." Pub. L. 119-37, div. B, §781, 139 Stat. 558 (2025) (emphasis added).

36.     Thus, post-November 12, 2026, hemp will be defined based on the concentration of *all* THC isomers on a dry weight basis, rather than the concentration of delta-9 THC.

37.     Additionally, the 2025 Farm Bill Amendments add "inclusions" and "exclusions" to the definition of "hemp." Pub. L. 119-37, div. B, §781, 139 Stat. 559 (2025).

38.     "Industrial hemp," will be included in the definition of "hemp." *Id.*

39.     The 2025 Farm Bill Amendments exclude from the definition of "hemp" certain intermediate and final "hemp-derived cannabinoid products." *Id.*

40.     A "hemp-derived cannabinoid product" is a product derived from hemp that (i) contains any cannabinoids and (ii) is intended for human or animal use through application, inhalation, or ingestion. Pub. L. 119-37, div. B, §781, 139 Stat. 560 (2025).

41.     An "intermediate" hemp-derived cannabinoid product will be excluded from the federal definition of hemp if it (i) contains cannabinoids that are not naturally occurring, (ii) contains any synthesized cannabinoids, or (iii) contains more

9

than 0.3% total THC content. *Id.* Intermediate hemp-derived cannabinoid products will also be excluded from the federal definition of hemp if they are marketed or sold for consumption by consumers. *Id.*

42.     A "final" hemp-derived cannabinoid product will be excluded from the federal definition of hemp if it (i) contains cannabinoids that are not naturally occurring, (ii) contains any synthesized cannabinoids, or (iii) contains more than 0.4 milligrams of THC per container. *Id.*

43.     All other hemp-derived cannabinoid products will continue to meet the federal definition of "hemp."

## MISSOURI REGULATION OF MARIJUANA

44.     In 2018, Missourians amended their Constitution to legalize the production, sale, and use of marijuana for medical purposes. That amendment is codified in Article XIV, Section 1 of the Missouri Constitution.

45.     In 2022, Missourians further amended their Constitution to legalize the production, sale, and use of marijuana for recreational purposes. That amendment is codified in Article XIV, Section 2 of the Missouri Constitution.

46.     The Missouri Constitution defines "marijuana" as follows:

> *Cannabis indica*, *Cannabis sativa*, and *Cannabis ruderalis*, hybrids of such species, and any other strains commonly understood within the scientific community to constitute marijuana, as well as resin extracted from the marijuana plant and marijuana-infused products. "Marijuana" or "marihuana" do not include industrial

> hemp, as defined by Missouri statute, or commodities or products manufactured from industrial hemp

Mo. Const. art. XIV, § 1.2(8); Mo. Const. art. XIV, § 2.2(13).

47. Under the Constitution, marijuana can be cultivated, manufactured, and sold only by entities who possess a license issued by DHSS. *See generally* Mo. Const. art. XIV, §§ 1-2.

48. Further, "all marijuana . . . sold in Missouri shall be cultivated in a [licensed facility] located in Missouri." Mo. Const. art. XIV, § 1.3(21); *see also* Mo. Const. art. XIV, § 2.3(25).

49. Likewise, all "marijuana-infused products" sold in Missouri "shall be manufactured in Missouri." Mo. Const. art. XIV, § 1.3(22); *see also* Mo. Const. art. XIV, § 2.3(26).

50. DHSS maintains regulations similarly requiring all marijuana and marijuana-infused products to be cultivated and manufactured in Missouri. 19 CSR 100-1.100(4)(I); 19 CSR 100-1.100(4)(H).

51. Under Article XIV, DHSS may limit the number of licenses it grants. It has chosen to do so.

52. The Missouri Constitution imposes minimum licensure requirements based on the population of each congressional district, using the districts as of December 2018.

53. This minimum number of licenses (which DHSS has chosen to treat as the maximum) has been supplemented only via successful administrative appeals where applicants have been awarded licenses, adjustments to the population of the districts, and the conversion process from medical marijuana to full adult use.

54. As of the date of this filing, DHSS has issued 68 cultivation licenses, 224 dispensary licenses, and 91 manufacturing licenses.[3]

55. DHSS has issued the maximum number of licenses in each category (cultivation, dispensary, and manufacturing) and will not accept new applications.

56. Marijuana is a Schedule I controlled substance under Missouri law. § 195.017.2(5)(ff), RSMo.

57. It remains a crime in Missouri to grow, manufacture, or sell marijuana unless licensed by DHSS.

## EXISTING MISSOURI LAW GOVERNING HEMP

58. Prior to December 31, 2022, Missouri had a federally approved hemp plan.

59. That plan was discontinued as of December 31, 2022 and all licensing and regulation of hemp in Missouri was transferred to the United States Department of Agriculture.

---

[3] *See* https://health.mo.gov/safety/cannabis/lic-com-rel.php#:~:text=%7CComprehensive%20and%20Medical%0ACultivation%20%7C68%20%7C6%20%7C

60. Thus, any Missouri producers of hemp must apply through the United States Department of Agriculture to be licensed under the Domestic Hemp Production Program.[4]

61. At present, Missouri law does not generally define "hemp."

62. Instead, existing Missouri law defines "industrial hemp" and "illegal industrial hemp." *See* § 195.010(21), (24), RSMo.

63. Missouri's current definition of "industrial hemp" generally tracks the existing federal definition of "hemp" and is based on the total concentration of delta-9 THC. *See* § 195.010(24), RSMo.

64. In turn, Missouri statutes currently define "marijuana" to exclude industrial hemp. § 195.010(28), RSMo.

65. In short, under existing Missouri law it is legal to cultivate, sell, possess, and transport hemp that is legal under federal law.

## HOUSE BILL 2641

66. Governor Kehoe signed HB 2641 on April 23, 2026.

---

[4]

https://extension.missouri.edu/publications/mx77#:~:text=On%20December%2031%2C%202022%2C%20Missouri%E2%80%99s%20state%2Drun%20program%20was%20discontinued

67. HB 2641 eliminates the current definitions of "industrial hemp" and "illegal industrial hemp" and replaces them with new definitions of "hemp" and "industrial hemp," to be codified in Section 195.900. *See* Ex. A at 6-8.

68. Section 195.900 is to be known as the Intoxicating Cannabinoid Control Act. *Id.* at 11.

69. Despite its title as the "Intoxicating Cannabinoid Control Act," HB 2641 is not limited to intoxicating cannabinoid products. As set forth below, HB 2641 applies to all hemp-derived cannabinoid products—including products containing CBD and other non-psychoactive, non-intoxicating cannabinoids.

70. HB 2641 adopts a general definition of "hemp" that tracks the federal definition that will go into effect on November 12, 2026. *See* Ex. A at 11-12.

71. That definition turns on whether the plant/product contains more or less than 0.3% total THC concentration. *Id.*

72. HB 2641 also adopts a new definition of "industrial hemp" that generally tracks the federal definition that will go into effect on November 12, 2026. *See id.* at 12-13.

73. HB 2641 includes "industrial hemp" within the definition of "hemp." *Id.* at 12.

74. HB 2641 generally defines "hemp-derived cannabinoid product" in a way that tracks the federal definition of such term that will go into effect on November 12, 2026. *Id.* at 12.

75. HB 2641 excludes certain "intermediate" and "final" hemp-derived products from the definition of "hemp" under Missouri law. *Id.* at 12. Again, HB 2641 phrases these exclusions in a way that tracks the federal exclusions that will go into effect on November 12, 2026. *Id.* at 12.

76. HB 2641 will now statutorily define "marijuana" to have "the same meaning given to the term in Article XIV of the Constitution of Missouri." *Id.*

77. Further, HB 2641 states "[t]he term 'marijuana' shall not be construed to conform to or be included in the definition of 'hemp' in this section." *Id.*

78. HB 2641, however, then states:

> The **cultivation, production, manufacturing,** testing, **transportation, and retail sale of all hemp-derived cannabinoid products** within this state shall be **conducted solely** by entities licensed by the department under Article XIV of the Constitution of Missouri. **Hemp-derived cannabinoid products shall be considered marijuana** and shall be subject to the legal framework contained in Article XIV of the Constitution of Missouri under which the purchase, possession, consumption, use, delivery, manufacturing, and sale of marijuana is regulated by the department.

*Id.* at 13 (emphasis added).

79. HB 2641 then states:

The term "hemp-derived cannabinoid product" shall be construed to conform to, and be included in, the definition of "marijuana" under Article XIV of the Constitution of Missouri but shall not be construed to conform to or be included in the definition of "hemp" in this section or in the definition of "industrial hemp" in this section.

*Id.* at 14.

80.    Immediately thereafter, HB 2641 states:

Hemp and industrial hemp shall not be considered marijuana and shall not be subject to the legal framework contained in Article XIV of the Constitution of Missouri or in this section. Nothing in this section shall be construed to regulate hemp, industrial hemp, or products that do not fall within the definition of hemp-derived cannabinoid products, and the provisions of this section shall not be construed to conflict with or otherwise preempt the Agriculture Improvement Act of 2018, Pub. L. 115-334, as amended.

*Id.*

81.    HB 2641 further provides:

**Notwithstanding any provision of law to the contrary, all hemp-derived cannabinoid products are marijuana and shall be subject to the jurisdiction of the department and the office of the attorney general consistent with Article XIV of the Constitution of Missouri** and the provisions of this section. The department and the office of the attorney general shall be authorized to enforce the provisions of this section in such a manner as **to ensure that no hemp-derived cannabinoid products are cultivated, manufactured, tested, transported, or sold within this state outside of a licensed comprehensive facility, medical facility, marijuana testing facility, or marijuana microbusiness**

**facility, as such terms are defined in Article XIV of the Constitution of Missouri**.

*Id.* at 14 (emphasis added).

82.     HB 2641 inconsistently uses "hemp" and "hemp-derived cannabinoid products."

83.     On the one hand, what will become Section 195.900.2(3) defines "hemp" consistently with federal law going into effect on November 12, 2026, under which some hemp-derived cannabinoid products remain included in the definition of permitted hemp.

84.     On the other hand, what will become Section 195.900.2(7) simultaneously says that "marijuana" is not included in the definition of "hemp" while stating that "marijuana" has the same meaning assigned by the Missouri Constitution, which includes the entire *Cannabis sativa* plant, except for "industrial hemp." *See* Mo. Const. art. XIV, § 1.2(8); Mo. Const. art. XIV, § 2.2(13).

85.     Then, what will become Section 195.900.3 and Section 195.900.4 say that all hemp-derived cannabinoid products are marijuana, even though the definition of "hemp" in what will become Section 195.900.2(3) includes some hemp-derived cannabinoid products.

86.     Adding to the confusion, what will become Section 195.900.5 then says "hemp" is not included in the definition of "marijuana" and that the statute should

not be "construed to conflict with" the 2018 Farm Bill, under which some hemp-derived cannabinoid products are "hemp."

87. Finally, what will become Section 195.900.6 says that the statutes should not be construed to prohibit the interstate commerce of "hemp" through Missouri—presumably to avoid preemption of HB 2641 under the 2018 Farm Bill—while what will become Section 195.900.3 and Section 195.900.7 explicitly restrict the "transportation" of hemp-derived cannabinoid products, some which are (i) clearly within the federal definition of "hemp" and (ii) inconsistently defined as both "hemp" and "marijuana" in HB 2641, to entities licensed by DHSS.

88. Insofar as HB 2641 is read to treat federally legal hemp-derived cannabinoid products as "marijuana" and subject them to the Article XIV regulatory framework, Missouri will discriminate against out-of-state businesses by blocking them from selling products that are legal under federal law in Missouri because those products are not cultivated or manufactured *in Missouri*, as required by Article XIV of the Missouri Constitution and DHSS regulations.

89. HB 2641 does *not* outright prohibit in Missouri the sale of hemp-derived cannabinoid products that are legal under federal law. Instead, it potentially limits whether such products can be sold based on *where* the product is manufactured or the underlying hemp is grown.

18

90. HB 2641 further creates an enforcement scheme under which the Missouri Highway Patrol and local law enforcement officials are to aid in ensuring that entities not licensed by DHSS do not transport such products in Missouri. *Id.* at 14-15 (subsection .9).

91. HB 2641 states that "the enactment of section 195.800, 195.819, and 195.900 and the repeal and reenactment of section 195.010 shall become effective on November 12, 2026." Ex. A at 16.

92. Separately, however, HB 2641 states that the provisions to be codified at Section 195.900 "shall become effective November 12, 2026" as to *certain products*. *Id.* at 15.

93. HB 2641 first purports to identify a subset of hemp-derived cannabinoid products as to which the law will become effective on November 12, 2026, but then immediately states the law will become effective as to all hemp-derived cannabinoid products except "all other" hemp-derived cannabinoid products, unless Congress delays the effective date of the 2025 Farm Bill Amendments. *Id.* at 15-16.

94. The interaction of these provisions is unclear from the text of HB 2641. It is entirely possible Section 195.900 will take effect on November 12, 2026 (thus, as a matter of statutory text, subjecting all hemp-derived cannabinoid products to the Article XIV regulatory scheme) and, if Congress delays the effective date of the

19

2025 Farm Bill Amendments, industry participants will be left to guess whether Section 195.900 is actually operative as to various categories of products under what will be subsection 11 of Section 195.900.

## IMPACT ON PLAINTIFFS

95.     Implementation of HB 2641 will have far-reaching negative effects on Plaintiffs, threatening to destroy established businesses, eliminate jobs, and cause millions of dollars in economic losses.

96.     HB 2641 will prohibit members of the MoHemp Trade Association from manufacturing, distributing, and selling hemp-derived cannabinoid products in the state of Missouri because these members do not hold marijuana licenses from DHSS. None of the Association's members hold DHSS marijuana licenses and could not obtain them even if they wanted to. There are no more marijuana licenses available in Missouri.

97.     This will cause members of the Association to move out of the state of Missouri or shut down operations entirely.

98.     HB 2641 will prohibit Lifted Liquids, Inc., from distributing and transporting products into and through Missouri, making it impossible for Lifted Liquids, Inc., to continue its Missouri operations.

99.     Lifted Liquids also ships products through Missouri to customers in other states.

100. Lifted Liquids, Inc., will also be forced to reassess and change its shipping patterns because HB 2641 prohibits transportation *through* Missouri, even if the final destination for hemp-derived cannabinoid products is not in the state.

101. MNG 2005, Inc. will no longer be allowed to manufacture federally legal hemp-derived cannabinoid products because HB 2641 requires manufacturers of hemp-derived products to hold a license from DHSS. MNG 2005, Inc., does not hold a DHSS marijuana license and cannot obtain one because DHSS has issued the maximum number of manufacturing licenses and is not accepting new applications.

102. MNG 2005, Inc. will also no longer be able to sell federally legal hemp-derived cannabinoid products because HB 2641 requires that all hemp-derived products be sold in DHSS-licensed marijuana dispensaries. MNG 2005, Inc.'s twelve Missouri stores are not DHSS-licensed marijuana dispensaries.

103. These changes will dramatically affect MNG 2005, Inc.'s business, making it impossible for it to manufacture, sell, or distribute hemp-derived cannabinoid products within or outside of Missouri.

104. MNG 2005, Inc.'s stores in Missouri would be significantly negatively impacted, resulting in the jeopardizing of Missouri employees. MNG 2005, Inc. would also not be able to stock its stores located in New York, Texas, Illinois, and Pennsylvania, jeopardizing those operations as well.

105. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

106. As set forth above, HB 2641 contains hopelessly conflicting definitions of "marijuana," "hemp," and "hemp-derived products."

107. HB 2641 purports to adopt the definition of "marijuana" in the Missouri Constitution, which covers the entire *Cannabis sativa* plant (except "industrial hemp"), while simultaneously stating "marijuana" and "hemp" are mutually exclusive and adopting a substantially broader definition of "hemp" that tracks federal law.

108. HB 2641 also inconsistently handles "hemp-derived cannabinoid products" by (i) tracking the federal definition of hemp and (ii) stating that Section 195.900 should not be construed to conflict with the 2018 Farm Bill, while simultaneously stating—multiple times—that all hemp-derived cannabinoid products are "marijuana."

109. The confusion is compounded by HB 2641 simultaneously saying it should not be construed to prevent the interstate commerce of "hemp," while also explicitly restricting the transportation of "hemp" to entities licensed by DHSS.

110. Because it is generally illegal to grow, manufacture, and sell marijuana in Missouri without a license, the definition of "hemp" and "hemp-derived cannabinoid products" have criminal-law implications.

111. These hopelessly conflicting definitions and statutory provisions do not allow Plaintiffs, or persons of ordinary intelligence, a reasonable opportunity to know and understand what conduct is prohibited, so that they can act accordingly.

112. These hopelessly conflicting definitions and statutory provisions also impermissibly delegate substantial interpretive authority to a wide array of law enforcement officials and prosecutors to determine on an *ad hoc*, subjective basis what conduct is legal or illegal.

113. HB 2641 is rendered further vague and indefinite by its incomprehensible delayed-effective date provisions, which threaten to make the law applicable to some unascertainable set of products but not others, depending on what happens with the 2025 Farm Bill Amendments between now and November 12, 2026.

114. Members of Plaintiff MoHemp Trade Association currently manufacture and sell in Missouri intermediate hemp-derived cannabinoid products that contain naturally occurring, non-synthesized cannabinoids in a concentration less than 0.3% delta-9 THC on a dry weight basis and are not intended for human consumption.

115. Members of Plaintiff MoHemp Trade Association desire and intend to continue manufacturing and selling in Missouri intermediate hemp-derived cannabinoid products that contain naturally occurring, non-synthesized cannabinoids in a concentration less than 0.3% on a dry weight basis and are not intended for human consumption after November 12, 2026.

116. Plaintiffs Lifted Liquids, Inc., and MNG 2005, Inc., currently manufacture and sell in Missouri final hemp-derived cannabinoid products that contain naturally occurring, non-synthesized cannabinoids in a concentration less than 0.4 milligrams THC per container.

117. Plaintiffs Lifted Liquids, Inc., and MNG 2005, Inc. desire and intend to continue manufacturing and selling in Missouri final hemp-derived cannabinoid products that contain naturally occurring, non-synthesized cannabinoids in a concentration less than 0.4 milligrams THC per container after November 12, 2026.

118. The products Plaintiffs sell and desire and intend to continue selling meet the definition "hemp" that will be in effect under 7 U.S.C. § 1639o as of November 12, 2026.

119. HB 2641 is, in total, unconstitutionally vague as applied to Plaintiffs because it is impossible to determine whether HB 2641 will deem their products lawful "hemp" or unlawful "marijuana" due to its inconsistent and vague definitions and treatment of such products.

120. Plaintiffs face a substantial and intolerable risk of prosecution and *ad hoc* enforcement by Missouri law enforcement officials and prosecutors once HB 2641 goes into effect.

121. HB 2641 is designed and intended to regulate individuals and entities engaged in the manufacture and sale of hemp-derived cannabinoid products. Indeed, Section 195.900 is entitled the "Intoxicating Cannabinoid Control Act."

122. Yet HB 2641, by its terms, applies to all hemp-derived cannabinoid products—including products containing only non-psychoactive, non-intoxicating cannabinoids such as CBD.

123. HB 2641 cannot constitutionally be applied to such individuals and entities because its inconsistent and vague definitions and treatment of marijuana, hemp, and hemp-derived cannabinoid products render it impossible for such individuals and entities to determine whether their products are lawful hemp or unlawful marijuana.

124. HB 2641 is unconstitutionally vague on its face.

125. These defects render HB 2641 void in its entirety, as it is impossible to apply the bill's provisions due to its fundamental failure to intelligently define what is lawful and what is not.

## COUNT II:
## HOUSE BILL 2641 VIOLATES THE
## DORMANT COMMERCE CLAUSE

126.   Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

127.   Under HB 2641, final hemp-derived cannabinoid products containing 0.4 milligrams of THC,[5] or less, of naturally occurring, non-synthesized cannabinoids can be legally sold in Missouri, but only if such products are grown and manufactured entirely in Missouri and sold at a dispensary licensed with DHSS.

128.   HB 2641 violates the dormant Commerce Clause of the United States Constitution because it favors in-state economic interests over those of anyone who cultivates, derives, manufactures, or sells otherwise lawful hemp-derived products outside of Missouri and substantially burdens interstate commerce.

129.   Plaintiffs will suffer irreparable harm if HB 2641 takes effect. Lifted Liquids, Inc., will lose access to the Missouri market entirely. MNG 2005, Inc., will likely be forced to close Missouri stores, jeopardizing the jobs, and cease manufacturing operations that support its stores in four other states. Members of the MoHemp Trade Association will collectively lose substantial annual revenue and jobs will be jeopardized.

---

[5] Or intermediate hemp-derived products containing less than 0.3% THC on a dry-weight basis.

130. Members of Plaintiff MoHemp Trade Association and Plaintiffs MNG 2005, Inc., and Lifted Liquids, Inc., are currently selling products in Missouri that would otherwise remain lawful under HB 2641 to sell, but for the fact that Plaintiffs do not—and due to the unavailability of licenses from DHSS, *cannot*—cultivate, manufacture, or sell in Missouri.

131. Plaintiffs are thus currently engaged in profitable conduct that will be rendered unlawful by HB 2641.

132. Due to sovereign immunity, Plaintiffs will have no economic recourse against Defendants or the State of Missouri.

133. Plaintiffs cannot obtain DHSS marijuana licenses because DHSS has issued the maximum number of licenses permitted under Article XIV of the Missouri Constitution and is not accepting new applications.

134. Even if licenses were available, Plaintiffs could not lawfully sell their existing products because Article XIV requires all marijuana and marijuana-infused products sold in Missouri to be cultivated and manufactured entirely in Missouri. Plaintiffs' products are manufactured outside Missouri or contain hemp cultivated outside Missouri.

## COUNT III:
## HOUSE BILL 2641 IS PREEMPTED BY THE FARM BILL

135. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

136. The 2018 Farm Bill explicitly preempts State laws that "prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 through the State." 2018 Farm Bill § 10114(b).

137. Under current federal law, any hemp or hemp-derived product with a delta-9 THC concentration less than 0.3% by dry weight is "hemp."

138. Once the 2025 Farm Bill Amendments take effect, federal law will define "hemp" to cover, among other things, hemp-derived products containing naturally occurring, non-synthesized cannabinoids that meet the concentration requirements for intermediate or final hemp-derived products.

139. HB 2641, however, potentially defines all hemp-derived cannabinoid products as marijuana and specifies that such products can be transported only by entities licensed by DHSS.

140. Practically speaking, this means any non-licensed entity, including Plaintiffs, will be barred from transporting such products through Missouri.

141. Members of Plaintiff MoHemp Trade Association and Plaintiffs MNG 2005, Inc., and Lifted Liquids, Inc., currently transport such products in and through Missouri in interstate commerce in accordance with subtitle G of the Agricultural Marketing Act of 1946.

142. Plaintiffs Lifted Liquids, Inc., and MNG 2005, Inc., and members of Plaintiff MoHemp Trade Association, would, in the future, continue transporting such products in and through Missouri in interstate commerce, but for HB 2641.

143. While HB 2641 purports to say that "[n]othing in this section shall be construed to prohibit the interstate commerce of hemp or the transportation or shipment of hemp through this state," HB 2641 simultaneously directs that "all hemp-derived cannabinoid products are marijuana" and state officials shall "ensure that no hemp-derived cannabinoid products are . . . transported . . . within this state outside of a licensed comprehensive facility, medical facility, marijuana testing facility, or marijuana microbusiness facility, as such terms are defined in Article XIV of the Constitution of Missouri." Ex. A at 14.

144. If HB 2641 is read so as to include **all** hemp-derived cannabinoid products within the definition of "marijuana," then HB 2641 "prohibit[s] the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 through the State" and is expressly preempted by the 2018 Farm Bill.

145. HB 2641 does not contain a severability clause. *See generally* Ex. A.

146. Missouri's general severability statute (§ 1.140, RSMo) does not save HB 2641.

147. Under the general severability statute, a void provision cannot be severed if "the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one" or if "the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent." § 1.140, RSMo.

148. Here, multiple provisions of HB 2641 appear to treat all hemp-derived cannabinoid products as "marijuana." Those provisions are integral to the entire statutory scheme the Missouri General Assembly attempted to enact in HB 2641. Those provisions attempt to subject all hemp-derived cannabinoid products to the regulatory scheme in Article XIV of the Missouri Constitution. Subsections 8 and 9 of what will become Section 195.800 similarly hinge on such products being subjected to that regulatory scheme and they are "incomplete and incapable of being executed" if subsections 3, 4, and 7 are invalid (either because they are expressly preempted or because they violate the dormant Commerce Clause).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

   a.   Enter a declaratory judgment that HB 2641 is unconstitutionally vague, both facially and as applied to Plaintiffs, in violation of the Due

Process Clause of the Fourteenth Amendment to the United States Constitution;

b.      Enter a declaratory judgment that HB 2641 violates the dormant Commerce Clause of the United States Constitution;

c.      Enter a declaratory judgment that HB 2641 is expressly preempted by the Agriculture Improvement Act of 2018, Pub. L. 115-334;

d.      Enjoin Defendants, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from enforcing, implementing, or otherwise giving effect to HB 2641, including Section 195.900, RSMo, as enacted thereby; and

e.      Grant such other and further relief as this Court deems just and proper.

31

Respectfully submitted,

**STINSON LLP**

*/s/ Charles W. Hatfield*
Charles W. Hatfield, No. 40363
Alixandra S. Cossette, No. 68114
Alexander C. Barrett, No. 68695
Greta M. Bax, No. 73354
230 W. McCarty Street
Jefferson City, MO 65101
Phone: 573.636.6263
Fax: 573.636.6231
chuck.hatfield@stinson.com
alix.cossette@stinson.com
alexander.barrett@stinson.com
greta.bax@stinson.com

*Attorneys for Plaintiffs*