# EXHIBIT A

SECOND REGULAR SESSION

[TRULY AGREED TO AND FINALLY PASSED]

SENATE SUBSTITUTE FOR

HOUSE COMMITTEE SUBSTITUTE FOR

# HOUSE BILL NO. 2641

## 103RD GENERAL ASSEMBLY

6366S.11T         2026

## AN ACT

To repeal section 195.010, RSMo, and to enact in lieu thereof five new sections relating to cannabis, with penalty provisions and an effective date.

*Be it enacted by the General Assembly of the state of Missouri, as follows:*

Section A. Section 195.010, RSMo, is repealed and five new sections enacted in lieu thereof, to be known as sections 195.010, 195.800, 195.819, 195.900, and 1, to read as follows:

195.010. The following words and phrases as used in this chapter and chapter 579, unless the context otherwise requires, mean:

(1) "Acute pain", pain, whether resulting from disease, accidental or intentional trauma, or other causes, that the practitioner reasonably expects to last only a short period of time. Acute pain shall not include chronic pain, pain being treated as part of cancer care, hospice or other end-of-life care, or medication-assisted treatment for substance use disorders;

(2) "Addict", a person who habitually uses one or more controlled substances to such an extent as to create a tolerance for such drugs, and who does not have a medical need for such drugs, or who is so far addicted to the use of such drugs as to have lost the power of self-control with reference to his or her addiction;

(3) "Administer", to apply a controlled substance, whether by injection, inhalation, ingestion, or any other means, directly to the body of a patient or research subject by:

(a) A practitioner (or, in his or her presence, by his or her authorized agent); or

EXPLANATION — Matter enclosed in bold-faced brackets **[thus]** in the above bill is not enacted and is intended to be omitted from the law. Matter in **bold-face** type in the above bill is proposed language.

Case 2:26-cv-04170-MDH    Document 1-1    Filed 07/16/26    Page 2 of 17

(b)  The patient or research subject at the direction and in the presence of the practitioner;

(4)  "Agent", an authorized person who acts on behalf of or at the direction of a manufacturer, distributor, or dispenser.  The term does not include a common or contract carrier, public warehouseman, or employee of the carrier or warehouseman while acting in the usual and lawful course of the carrier's or warehouseman's business;

(5)  "Attorney for the state", any prosecuting attorney, circuit attorney, or attorney general authorized to investigate, commence and prosecute an action under this chapter;

(6)  "Controlled substance", a drug, substance, or immediate precursor in Schedules I through V listed in this chapter;

(7)  "Controlled substance analogue", a substance the chemical structure of which is substantially similar to the chemical structure of a controlled substance in Schedule I or II and:

(a)  Which has a stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance included in Schedule I or II; or

(b)  With respect to a particular individual, which that individual represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance included in Schedule I or II.  The term does not include a controlled substance; any substance for which there is an approved new drug application; any substance for which an exemption is in effect for investigational use, for a particular person, under Section 505 of the federal Food, Drug and Cosmetic Act (21 U.S.C. Section 355) to the extent conduct with respect to the substance is pursuant to the exemption; or any substance to the extent not intended for human consumption before such an exemption takes effect with respect to the substance;

(8)  "Counterfeit substance", a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person who in fact manufactured, distributed, or dispensed the substance;

(9)  "Deliver" or "delivery", the actual, constructive, or attempted transfer from one person to another of drug paraphernalia or of a controlled substance, or an imitation controlled substance, whether or not there is an agency relationship, and includes a sale;

(10)  "Dentist", a person authorized by law to practice dentistry in this state;

(11)  "Depressant or stimulant substance":

(a)  A drug containing any quantity of barbituric acid or any of the salts of barbituric acid or any derivative of barbituric acid which has been designated by the United States Secretary of Health and Human Services as habit forming under 21 U.S.C. Section 352(d);

(b)  A drug containing any quantity of:

a.  Amphetamine or any of its isomers;

b.  Any salt of amphetamine or any salt of an isomer of amphetamine; or

c.  Any substance the United States Attorney General, after investigation, has found to be, and by regulation designated as, habit forming because of its stimulant effect on the central nervous system;

(c)  Lysergic acid diethylamide; or

(d)  Any drug containing any quantity of a substance that the United States Attorney General, after investigation, has found to have, and by regulation designated as having, a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect;

(12)  "Dispense", to deliver a narcotic or controlled dangerous drug to an ultimate user or research subject by or pursuant to the lawful order of a practitioner including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for such delivery.  "Dispenser" means a practitioner who dispenses;

(13)  "Distribute", to deliver other than by administering or dispensing a controlled substance;

(14)  "Distributor", a person who distributes;

(15)  "Drug":

(a)  Substances recognized as drugs in the official United States Pharmacopoeia, Official Homeopathic Pharmacopoeia of the United States, or Official National Formulary, or any supplement to any of them;

(b)  Substances intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in humans or animals;

(c)  Substances, other than food, intended to affect the structure or any function of the body of humans or animals; and

(d)  Substances intended for use as a component of any article specified in this subdivision.  It does not include devices or their components, parts or accessories;

(16)  "Drug-dependent person", a person who is using a controlled substance and who is in a state of psychic or physical dependence, or both, arising from the use of such substance on a continuous basis.  Drug dependence is characterized by behavioral and other responses which include a strong compulsion to take the substance on a continuous basis in order to experience its psychic effects or to avoid the discomfort caused by its absence;

(17) "Drug enforcement agency", the Drug Enforcement Administration in the United States Department of Justice, or its successor agency;

(18) "Drug paraphernalia", all equipment, products, substances and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance or an imitation controlled substance in violation of this chapter or chapter 579. It includes, but is not limited to:

(a) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

(b) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances or imitation controlled substances;

(c) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance or an imitation controlled substance;

(d) Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness or purity of controlled substances or imitation controlled substances;

(e) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances or imitation controlled substances;

(f) Dilutents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use, or designed for use in cutting controlled substances or imitation controlled substances;

(g) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana;

(h) Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances or imitation controlled substances;

(i) Capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances or imitation controlled substances;

(j) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances or imitation controlled substances;

(k) Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injecting controlled substances or imitation controlled substances into the human body;

(l)   Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:

a.   Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

b.   Water pipes;

c.   Carburetion tubes and devices;

d.   Smoking and carburetion masks;

e.   Roach clips meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

f.   Miniature cocaine spoons and cocaine vials;

g.   Chamber pipes;

h.   Carburetor pipes;

i.   Electric pipes;

j.   Air-driven pipes;

k.   Chillums;

l.   Bongs;

m.   Ice pipes or chillers;

(m)   Substances used, intended for use, or designed for use in the manufacture of a controlled substance.

In determining whether an object, product, substance or material is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

a.   Statements by an owner or by anyone in control of the object concerning its use;

b.   Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance or imitation controlled substance;

c.   The proximity of the object, in time and space, to a direct violation of this chapter or chapter 579;

d.   The proximity of the object to controlled substances or imitation controlled substances;

e.   The existence of any residue of controlled substances or imitation controlled substances on the object;

f.   Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he or she knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter or chapter 579; the innocence of an owner, or of anyone in control of the object, as to direct violation of this chapter or chapter

579 shall not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;

g. Instructions, oral or written, provided with the object concerning its use;

h. Descriptive materials accompanying the object which explain or depict its use;

i. National or local advertising concerning its use;

j. The manner in which the object is displayed for sale;

k. Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

l. Direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

m. The existence and scope of legitimate uses for the object in the community;

n. Expert testimony concerning its use;

o. The quantity, form or packaging of the product, substance or material in relation to the quantity, form or packaging associated with any legitimate use for the product, substance or material;

(19) "Federal narcotic laws", the laws of the United States relating to controlled substances;

(20) **"Hemp", the same meaning given to the term in section 195.900;**

**(21)** "Hospital", a place devoted primarily to the maintenance and operation of facilities for the diagnosis, treatment or care, for not less than twenty-four hours in any week, of three or more nonrelated individuals suffering from illness, disease, injury, deformity or other abnormal physical conditions; or a place devoted primarily to provide, for not less than twenty-four consecutive hours in any week, medical or nursing care for three or more nonrelated individuals. The term hospital does not include convalescent, nursing, shelter or boarding homes as defined in chapter 198;

[(21) "Illegal industrial hemp":

[(a) All nonseed parts and varieties of the Cannabis sativa L. plant, growing or not, that contain an average delta-9 tetrahydrocannabinol (THC) concentration exceeding three-tenths of one percent on a dry weight basis;

[(b) Illegal industrial hemp shall be destroyed in the most effective manner possible, and such destruction shall be verified by the Missouri state highway patrol;]

(22) "Immediate precursor", a substance which:

(a) The state department of health and senior services has found to be and by rule designates as being the principal compound commonly used or produced primarily for use in the manufacture of a controlled substance;

(b)  Is an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance; and

(c)  The control of which is necessary to prevent, curtail or limit the manufacture of the controlled substance;

(23)  "Imitation controlled substance", a substance that is not a controlled substance, which by dosage unit appearance (including color, shape, size and markings), or by representations made, would lead a reasonable person to believe that the substance is a controlled substance.   In determining whether the substance is an imitation controlled substance the court or authority concerned should consider, in addition to all other logically relevant factors, the following:

(a)  Whether the substance was approved by the federal Food and Drug Administration for over-the-counter (nonprescription or nonlegend) sales and was sold in the federal Food and Drug Administration-approved package, with the federal Food and Drug Administration-approved labeling information;

(b)  Statements made by an owner or by anyone else in control of the substance concerning the nature of the substance, or its use or effect;

(c)  Whether the substance is packaged in a manner normally used for illicit controlled substances;

(d)  Prior convictions, if any, of an owner, or anyone in control of the object, under state or federal law related to controlled substances or fraud;

(e)  The proximity of the substances to controlled substances;

(f)  Whether the consideration tendered in exchange for the noncontrolled substance substantially exceeds the reasonable value of the substance considering the actual chemical composition of the substance and, where applicable, the price at which over-the-counter substances of like chemical composition sell.  An imitation controlled substance does not include a placebo or registered investigational drug either of which was manufactured, distributed, possessed or delivered in the ordinary course of professional practice or research;

(24)  "Industrial hemp"[:

(a)  All nonseed parts and varieties of the Cannabis sativa L. plant, growing or not, that contain an average delta-9 tetrahydrocannabinol (THC) concentration that does not exceed three-tenths of one percent on a dry weight basis or the maximum concentration allowed under federal law, whichever is greater;

(b)  Any Cannabis sativa L. seed that is part of a growing crop, retained by a grower for future planting, or used for processing into or use as agricultural hemp seed;

(c)  Industrial hemp includes industrial hemp commodities and products and topical or ingestible animal and consumer products derived from industrial hemp with a delta-9

tetrahydrocannabinol concentration of not more than three-tenths of one percent on a dry weight basis**], the same meaning given to the term in section 195.900**;

(25) "Initial prescription", a prescription issued to a patient who has never previously been issued a prescription for the drug or its pharmaceutical equivalent or who was previously issued a prescription for the drug or its pharmaceutical equivalent, but the date on which the current prescription is being issued is more than five months after the date the patient last used or was administered the drug or its equivalent;

(26) "Laboratory", a laboratory approved by the department of health and senior services as proper to be entrusted with the custody of controlled substances but does not include a pharmacist who compounds controlled substances to be sold or dispensed on prescriptions;

(27) "Manufacture", the production, preparation, propagation, compounding or processing of drug paraphernalia or of a controlled substance, or an imitation controlled substance, either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. This term does not include the preparation or compounding of a controlled substance or an imitation controlled substance or the preparation, compounding, packaging or labeling of a narcotic or dangerous drug:

(a) By a practitioner as an incident to his or her administering or dispensing of a controlled substance or an imitation controlled substance in the course of his or her professional practice; or

(b) By a practitioner or his or her authorized agent under his or her supervision, for the purpose of, or as an incident to, research, teaching or chemical analysis and not for sale;

(28) "Marijuana", all parts of the plant genus Cannabis in any species or form thereof, including, but not limited to *Cannabis Sativa L.*, except industrial hemp, Cannabis Indica, Cannabis Americana, Cannabis Ruderalis, and Cannabis Gigantea, whether growing or not, the seeds thereof, the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination;

(29) "Methamphetamine precursor drug", any drug containing ephedrine, pseudoephedrine, phenylpropanolamine, or any of their salts, optical isomers, or salts of optical isomers;

(30) "Narcotic drug", any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical analysis:

(a) Opium, opiate, and any derivative, of opium or opiate, including their isomers, esters, ethers, salts, and salts of isomers, esters, and ethers, whenever the existence of the isomers, esters, ethers, and salts is possible within the specific chemical designation. The term does not include the isoquinoline alkaloids of opium;

(b) Coca leaves, but not including extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(c) Cocaine or any salt, isomer, or salt of isomer thereof;

(d) Ecgonine, or any derivative, salt, isomer, or salt of isomer thereof;

(e) Any compound, mixture, or preparation containing any quantity of any substance referred to in paragraphs (a) to (d) of this subdivision;

(31) "Official written order", an order written on a form provided for that purpose by the United States Commissioner of Narcotics, under any laws of the United States making provision therefor, if such order forms are authorized and required by federal law, and if no such order form is provided, then on an official form provided for that purpose by the department of health and senior services;

(32) "Opiate" or "opioid", any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having addiction-forming or addiction-sustaining liability. The term includes its racemic and levorotatory forms. It does not include, unless specifically controlled under section 195.017, the dextrorotatory isomer of 3-methoxy-n-methyl-morphinan and its salts (dextromethorphan);

(33) "Opium poppy", the plant of the species Papaver somniferum L., except its seeds;

(34) "Over-the-counter sale", a retail sale licensed pursuant to chapter 144 of a drug other than a controlled substance;

(35) "Person", an individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, joint venture, association, or any other legal or commercial entity;

(36) "Pharmacist", a licensed pharmacist as defined by the laws of this state, and where the context so requires, the owner of a store or other place of business where controlled substances are compounded or dispensed by a licensed pharmacist; but nothing in this chapter shall be construed as conferring on a person who is not registered nor licensed as a pharmacist any authority, right or privilege that is not granted to him by the pharmacy laws of this state;

(37) "Poppy straw", all parts, except the seeds, of the opium poppy, after mowing;

(38)   "Possessed" or "possessing a controlled substance", a person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance.  A person has actual possession if he has the substance on his or her person or within easy reach and convenient control.  A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it.  Possession may also be sole or joint.  If one person alone has possession of a substance possession is sole.  If two or more persons share possession of a substance, possession is joint;

(39) "Practitioner", a physician, dentist, optometrist, podiatrist, veterinarian, scientific investigator, pharmacy, hospital or other person licensed, registered or otherwise permitted by this state to distribute, dispense, conduct research with respect to or administer or to use in teaching or chemical analysis, a controlled substance in the course of professional practice or research in this state, or a pharmacy, hospital or other institution licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to or administer a controlled substance in the course of professional practice or research;

(40)   "Production", includes the manufacture, planting, cultivation, growing, or harvesting of drug paraphernalia or of a controlled substance or an imitation controlled substance;

(41)   "Registry number", the number assigned to each person registered under the federal controlled substances laws;

(42)   "Sale", includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee;

(43) "State" when applied to a part of the United States, includes any state, district, commonwealth, territory, insular possession thereof, and any area subject to the legal authority of the United States of America;

(44) "Synthetic cannabinoid", includes unless specifically excepted or unless listed in another schedule, any natural or synthetic material, compound, mixture, or preparation that contains any quantity of a substance that is a cannabinoid receptor agonist, including but not limited to any substance listed in paragraph (ll) of subdivision (4) of subsection 2 of section 195.017 and any analogues; homologues; isomers, whether optical, positional, or geometric; esters; ethers; salts; and salts of isomers, esters, and ethers, whenever the existence of the isomers, esters, ethers, or salts is possible within the specific chemical designation, however, it shall not include any approved pharmaceutical authorized by the United States Food and Drug Administration;

(45) "Ultimate user", a person who lawfully possesses a controlled substance or an imitation controlled substance for his or her own use or for the use of a member of his or her

household or immediate family, regardless of whether they live in the same household, or for administering to an animal owned by him or by a member of his or her household. For purposes of this section, the phrase "immediate family" means a husband, wife, parent, child, sibling, stepparent, stepchild, stepbrother, stepsister, grandparent, or grandchild;

(46) "Wholesaler", a person who supplies drug paraphernalia or controlled substances or imitation controlled substances that he himself has not produced or prepared, on official written orders, but not on prescriptions.

**195.800. 1. Notwithstanding any other provision of law to the contrary, no state agency, including employees therein, shall disclose to the federal government, any federal government employee, or any unauthorized third party the statewide list or any individual information of persons who have applied for or obtained a qualifying patient identification card, a qualifying patient cultivation identification card, or a primary caregiver identification card, as those cards are described in Article XIV, Section 1 of the Constitution of Missouri relating to the right to access medical marijuana, unless required to do so pursuant to a subpoena or court order issued by a court of competent jurisdiction.**

**2. Any person who knowingly violates the provisions of this section shall be guilty of a class E felony.**

**195.819. Marijuana dispensary facilities, as described in Article XIV of the Constitution of Missouri, shall not create or retain any record containing the consumer's identifying information; provided, that a facility may create or retain such records if the consumer affirmatively agrees to such, in writing, and if the facility does not refuse to provide services or sell goods to the consumer if he or she does not agree to the creation or retention of such records. The provisions of this section shall not apply to any record-keeping requirements relating to qualifying patients and primary caregivers under Article XIV, Section 1 of the Constitution of Missouri. Any dispensary facility that violates the provisions of this section shall be assessed a five-hundred-dollar fine per occurrence.**

**195.900. 1. This section shall be known and may be cited as the "Intoxicating Cannabinoid Control Act".**

**2. As used in this section, the following terms mean:**

**(1) "Department", the department of health and senior services;**

**(2) "Division", the division of alcohol and tobacco control within the department of public safety;**

**(3) "Hemp", the plant Cannabis sativa L. and any part of that plant, including the seeds thereof, and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total tetrahydrocannabinol**

concentration, including tetrahydrocannabinolic acid, of not more than three-tenths of one percent on a dry-weight basis. "Hemp" shall include industrial hemp but shall not include the following:

(a)  Any viable seed from a Cannabis sativa L. plant that exceeds a total tetrahydrocannabinol concentration, including tetrahydrocannabinolic acid, of three-tenths of one percent on a dry-weight basis;

(b)  Any intermediate hemp-derived cannabinoid products containing:

a.  Cannabinoids that are not capable of being naturally produced by a Cannabis sativa L. plant;

b.  Cannabinoids that are capable of being naturally produced by a Cannabis sativa L. plant but that were synthesized or manufactured outside the plant; or

c.  More than three-tenths of one percent on a dry-weight basis of a combined total of tetrahydrocannabinols, including tetrahydrocannabinolic acid, and any other cannabinoids that have similar effects or are marketed as having similar effects on humans or animals as a tetrahydrocannabinol, as determined by the U.S. Secretary of Health and Human Services;

(c)  Any intermediate hemp-derived cannabinoid products marketed or sold as a final product or directly to an end consumer for personal or household use; or

(d)  Any final hemp-derived cannabinoid products containing:

a.  Cannabinoids that are not capable of being naturally produced by a Cannabis sativa L. plant;

b.  Cannabinoids that are capable of being naturally produced by a Cannabis sativa L. plant but that were synthesized or manufactured outside the plant; or

c.  Greater than four-tenths of one milligram combined total per container of tetrahydrocannabinols, including tetrahydrocannabinolic acid, and any other cannabinoids that have similar effects or are marketed as having similar effects on humans or animals as a tetrahydrocannabinol, as determined by the U.S. Secretary of Health and Human Services;

(4)  "Hemp-derived cannabinoid product", any intermediate or final product derived from hemp, other than industrial hemp, that contains cannabinoids in any form and is intended for human or animal use through any means of application or administration including, but not limited to, inhalation, ingestion, or topical application. "Hemp-derived cannabinoid product" shall not include a drug that is the subject of an application approved under subsection (c) or (j) of Section 505 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. Section 355, as amended;

(5)  "Industrial hemp", hemp that is:

(a)  Grown for the use of the stalk of the plant, fiber produced from such a stalk, or any other noncannabinoid compound, derivative, mixture, preparation, or manufacture of such a stalk;

(b)  Grown for the use of the whole grain, oil, cake, nut, hull, or any other noncannabinoid compound, derivative, mixture, preparation, or manufacture of the seeds of such plant;

(c)  Grown for the purpose of producing microgreens or other edible hemp leaf products intended for human consumption that are derived from an immature hemp plant that is grown from seeds that do not exceed the threshold for total tetrahydrocannabinol concentration under paragraph (a) of subdivision (3) of this subsection;

(d)  A plant that does not enter the stream of commerce and is intended to support hemp research at an institution of higher education, as defined in Section 101 of the Higher Education Act of 1965, 20 U.S.C. Section 1001, as amended, or an independent research institute; or

(e)  Grown for the use of a viable seed of the plant produced solely for the production or manufacture of any material described in paragraphs (a) to (d) of this subdivision;

(6)  "Intermediate hemp-derived cannabinoid product", a hemp-derived cannabinoid product that is:

(a)  Not yet in the final form or preparation marketed or intended to be used or consumed by a human or animal; or

(b)  A powder, liquid, tablet, oil, or other product form that is intended or marketed to be mixed, dissolved, formulated, or otherwise added to or prepared with or into any other substance prior to administration or consumption;

(7)  "Marijuana", the same meaning given to the term in Article XIV of the Constitution of Missouri.  The term "marijuana" shall not be construed to conform to or be included in the definition of "hemp" in this section;

(8)  "Transaction", the sale of a single unit of a hemp-derived cannabinoid product, including a single unit in a multiunit package.

3.  The cultivation, production, manufacturing, testing, transportation, and retail sale of all hemp-derived cannabinoid products within this state shall be conducted solely by entities licensed by the department under Article XIV of the Constitution of Missouri.  Hemp-derived cannabinoid products shall be considered marijuana and shall be subject to the legal framework contained in Article XIV of the Constitution of Missouri under which the purchase, possession, consumption, use, delivery, manufacturing, and sale of marijuana is regulated by the department.

**4.  The term "hemp-derived cannabinoid product" shall be construed to conform to, and be included in, the definition of "marijuana" under Article XIV of the Constitution of Missouri but shall not be construed to conform to or be included in the definition of "hemp" in this section or in the definition of "industrial hemp" in this section.**

**5.  Hemp and industrial hemp shall not be considered marijuana and shall not be subject to the legal framework contained in Article XIV of the Constitution of Missouri or in this section.  Nothing in this section shall be construed to regulate hemp, industrial hemp, or products that do not fall within the definition of hemp-derived cannabinoid products, and the provisions of this section shall not be construed to conflict with or otherwise preempt the Agriculture Improvement Act of 2018, Pub. L. 115-334, as amended.**

**6.  Nothing in this section shall be construed to prohibit the interstate commerce of hemp or the transportation or shipment of hemp through this state.**

**7.  Notwithstanding any provision of law to the contrary, all hemp-derived cannabinoid products are marijuana and shall be subject to the jurisdiction of the department and the office of the attorney general consistent with Article XIV of the Constitution of Missouri and the provisions of this section.  The department and the office of the attorney general shall be authorized to enforce the provisions of this section in such a manner as to ensure that no hemp-derived cannabinoid products are cultivated, manufactured, tested, transported, or sold within this state outside of a licensed comprehensive facility, medical facility, marijuana testing facility, or marijuana microbusiness facility, as such terms are defined in Article XIV of the Constitution of Missouri.**

**8.  No person or entity engaged in the sale of products that contain cannabidiol, hemp, marijuana, or cannabinoids; hemp-derived cannabinoid products; or paraphernalia to aid in the human or animal consumption of such products, other than a comprehensive marijuana dispensary facility, medical marijuana dispensary facility, or microbusiness dispensary facility, as such terms are defined in Article XIV of the Constitution of Missouri, shall carry on, conduct, or transact business under a name that contains as part of the name the word "dispensary" or any word of similar import.**

**9.  (1)  The office of the attorney general, the department, the department of public safety, the division, the Missouri state highway patrol, and any other state agency deemed necessary by the office of the attorney general to aid in the enforcement of this section shall concurrently be authorized to enforce the provisions of this section including, but not limited to, the prohibition of the cultivation, manufacturing, testing, transportation, and retail sale of hemp-derived cannabinoid products outside of licensed**

comprehensive facilities, medical facilities, marijuana testing facilities, or marijuana microbusiness facilities, as such terms are defined in Article XIV of the Constitution of Missouri.

(2) The office of the attorney general shall have primary jurisdiction to enforce the provisions of this section including, but not limited to:

(a) Utilizing a multijurisdictional enforcement approach including, but not limited to, direct coordination with the department, the department of public safety, the division, the Missouri state highway patrol, prosecuting and circuit attorneys, and any other state agency deemed necessary by the office of the attorney general;

(b) Collaborating and coordinating with local county and municipal governments and other political subdivisions; and

(c) Utilizing the department's reference laboratory.

10. Any person or entity that violates the provisions of this section shall be subject to a fine of five thousand dollars per transaction and shall be guilty of a class D felony.

11. (1) The provisions of this section shall become effective November 12, 2026, for:

(a) Hemp-derived cannabinoid products that:

a. Contain cannabinoids that are not capable of being naturally produced by a Cannabis sativa L. plant;

b. Contain cannabinoids that are capable of being naturally produced by a Cannabis sativa L. plant but that were synthesized or manufactured outside the plant;

c. Are sold, distributed, or marketed to a consumer as a product that can be smokable or vapeable in the form of raw plant material, flower, or bud material and that contain any amount of tetrahydrocannabinolic acid; or

d. Are sold, distributed, or marketed to a consumer in the form of any solid candy, gummy, chewable product, tablet, capsule, oil, baked good, or other solid edible product and that contain delta-9 tetrahydrocannabinol derived from hemp in any amount that exceeds naturally occurring concentrations in the source hemp plant material; and

(b) Except as provided in subdivision (2) of this subsection, all other hemp-derived cannabinoid products not described in paragraph (a) of this subdivision.

(2) For all other hemp-derived cannabinoid products not described in paragraph (a) of subdivision (1) of this subsection, the provisions of this section shall become effective November 12, 2026, except that if Congress delays the effective date of federal hemp restrictions under 7 U.S.C. Section 1639o on or before November 12, 2026, this section shall apply to such products only during any period in which such federal

restrictions prohibit such products; provided, that such products shall not be sold, distributed, or marketed to any person under the age of twenty-one.

**Section 1.** All persons employed in cannabis-related businesses in this state, including cultivation, processing, manufacturing, distribution, retail, and support operations, shall have the right to organize, form, join, and assist labor organizations and to bargain collectively with their employers through representatives of their own choosing. Cannabis industry employment, including work in climate-controlled indoor cultivation and processing facilities, is not "agricultural labor" as used for purposes of exemptions from collective bargaining and shall be treated as covered employment under Missouri's collective bargaining protections.

Section B. The enactment of sections 195.800, 195.819 and 195.900 and the repeal and reenactment of section 195.010 shall become effective on November 12, 2026.

