IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| **MOHEMP TRADE ASSOCIATION, LIFTED LIQUIDS, INC., and MNG 2005, INC.,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 2:26-cv-04170-MDH** |
| **MIKE KEHOE, in his official capacity as Governor of Missouri, *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

Before the Court is Defendants' Motion to Dismiss. (Doc. 10). Plaintiffs filed their Suggestions in Opposition (Doc. 13), and Defendants filed their Reply Suggestions (Doc. 15). Plaintiffs have also filed a Motion for Preliminary Injunction.[1] (Doc. 28). The parties likewise filed their respective suggestions pertaining to that motion. (Docs 31, 32).

**BACKGROUND**

Plaintiffs MoHemp Trade Association; Lifted Liquids, Inc.; and MNG 2005, Inc. filed their Complaint challenging the validity and enforceability of Missouri House Bill 2641 ("HB 2641"), alleging the measure is a legislative act that attempts to restrict and regulate the production and sale of hemp and hemp products in ways that violate the United States Constitution and federal statutes.

Plaintiff MoHemp Trade Association is a membership organization with the mission to support and expand Missouri's hemp industry through advocacy, education, and expert business

[1] In light of the Court's ruling on the Motion to Dismiss, Plaintiff's Motion for Preliminary Injunction is **DENIED AS MOOT**.

guidance. Members of the MoHemp Trade Association manufacture and sell intermediate and final hemp-derived cannabinoid products in Missouri.[2]

Plaintiff Lifted Liquids, Inc., d/b/a Urb, is a Kenosha, Wisconsin based company that manufactures, distributes, and sells final hemp-derived cannabinoid products into and through Missouri.

Plaintiff MNG 2005, Inc., is a St. Louis, Missouri-based company that manufactures and sells final hemp-derived cannabinoid products. It also operates fifty-five stores that sell hemp-derived products in five states, including twelve stores in Missouri.

## I. 2018 Farm Bill

*Cannabis sativa L.* is a plant commonly known as "hemp" or "marijuana." Hemp and marijuana are distinct cultivars of the same plant. The cannabis plant produces at least 113 different compounds referred to as "cannabinoids." One cannabinoid found in the cannabis plant is tetrahydrocannabinol ("THC"). THC has several isomers (distinct arrangements of the same molecular compounds), including delta-9 ("delta-9 THC"), the principal psychoactive chemical in cannabis. Other THC isomers include delta-8 ("delta-8 THC") and delta-10 ("delta-10 THC"). Another cannabinoid found in the cannabis plant is cannabidiol ("CBD"). CBD is a non-psychoactive, non-intoxicating cannabinoid that does not produce the "high" associated with THC.

In 2018, Congress enacted and the President signed the Agriculture Improvement Act of 2018, Pub. L. 115-334 (the "2018 Farm Bill"). The 2018 Farm Bill decoupled hemp from marijuana under the federal Controlled Substances Act and exempted cannabinoids derived from hemp from the definition of marijuana. The 2018 Farm Bill defined "hemp" to include "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives,

---

[2] Unless otherwise indicated, the background facts are taken from Plaintiffs' Complaint.

extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." As a result, federal law currently treats all derivatives of the *Cannabis sativa L.* plant with a delta-9 THC concentration of 0.3 percent or less on a dry weight basis as "hemp."

The 2018 Farm Bill contains an express preemption provision stating:

> (a) RULE OF CONSTRUCTION. – Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by [7 U.S.C. § 1639o])) or hemp products.
>
> (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS. – No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by [7 U.S.C. § 1639o]) through the State or the territory of the Indian Tribe, as applicable.

2018 Farm Bill § 10114.

The 2018 Farm Bill also contains an anti-preemption provision, stating:

> Nothing in this subsection preempts or limits any law of a State or Indian tribe that—
> (i) regulates the production of hemp; and
> (ii) is more stringent than this subchapter.

7 U.S.C. § 1639p(a)(3)(A).

In November 2025, Congress enacted amendments to 7 U.S.C. § 1639o, which are scheduled to go into effect on November 12, 2026 (the "2025 Farm Bill Amendments"). The 2025 Farm Bill Amendments will alter the federal definition of "hemp." First, the 2025 Farm Bill Amendments generally redefine "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total tetrahydrocannabinols concentration (including tetrahydrocannabinolic acid) of not more than 0.3 percent on a dry weight basis." Pub. L. 119-37, div. B, §781, 139 Stat. 558 (2025).

Additionally, the 2025 Farm Bill Amendments add "inclusions" and "exclusions" to the definition of "hemp." "Industrial hemp," will be included in the definition of "hemp." The 2025 Farm Bill Amendments exclude from the definition of "hemp" certain intermediate and final "hemp-derived cannabinoid products." A "hemp-derived cannabinoid product" is a product derived from hemp that (i) contains any cannabinoids and (ii) is intended for human or animal use.

An "intermediate" hemp-derived cannabinoid product will be excluded from the federal definition of hemp if it contains (i) cannabinoids that are not naturally occurring, (ii) any synthesized cannabinoids, or (iii) more than 0.3% combined total of THC content and any other cannabinoid that has effects similar to THC. Intermediate hemp-derived cannabinoid products will also be excluded from the federal definition of hemp if they are marketed or sold for consumption by consumers. A "final" hemp-derived cannabinoid product similarly will be excluded from the federal definition of hemp if it contains (i) cannabinoids that are not naturally occurring, (ii) any synthesized cannabinoids, or (iii) more than 0.4 milligrams per container of a combination of THC and any other cannabinoid that has similar effects. All other hemp-derived cannabinoid products will continue to meet the federal definition of "hemp."

## II. Missouri HB 2641

The Missouri Constitution defines "marijuana" as follows:

> "Marijuana or "marihuana" means *Cannabis indica*, *Cannabis sativa*, and *Cannabis ruderalis*, hybrids of such species, and any other strains commonly understood within the scientific community to constitute marijuana, as well as resin extracted from the marijuana plant and marijuana-infused products. "Marijuana" or "marihuana" do not include industrial hemp, as defined by Missouri statute, or commodities or products manufactured from industrial hemp.

Mo. Const. art. XIV, § 1.2(8); Mo. Const. art. XIV, § 2.2(13).

Marijuana is a Schedule I controlled substance under Missouri law. It remains a crime in Missouri to grow, manufacture, or sell marijuana unless licensed by the Missouri Department of

Health and Senior Services ("DHSS"). Under the state constitution, marijuana can be cultivated, manufactured, and sold only by entities who possess such a license. Further, "all marijuana . . . sold in Missouri shall be cultivated in a [licensed facility] located in Missouri." Mo. Const. art. XIV, § 1.3(21); *see also* Mo. Const. art. XIV, § 2.3(25). Likewise, all "marijuana-infused products sold in Missouri . . . shall be manufactured in Missouri." Mo. Const. art. XIV, § 2.3(26). DHSS maintains regulations similarly requiring all marijuana and marijuana-infused products to be cultivated and manufactured in Missouri. Under Article XIV, DHSS may limit the number of licenses it grants, and it has chosen to do so.

The Missouri Constitution imposes minimum licensure requirements based on the population of each congressional district, using the districts as of December 2018. As of the date of Plaintiffs' filing, DHSS had issued sixty-eight cultivation licenses, 224 dispensary licenses, and ninety-one manufacturing licenses. DHSS has issued the maximum number of licenses in each category (cultivation, dispensary, and manufacturing) and will not accept new applications.

Prior to December 31, 2022, Missouri had a federally approved hemp plan. That plan was discontinued as of December 31, 2022, and all licensing and regulation of hemp in Missouri was transferred to the United States Department of Agriculture. Thus, any Missouri producers of hemp must apply through the United States Department of Agriculture to be licensed under the Domestic Hemp Production Program. At present, Missouri law does not generally define "hemp." Instead, existing Missouri law defines "industrial hemp" and "illegal industrial hemp." Mo. Rev. Stat. §§ 195.010(21), (24) (2018). Missouri's current definition of "industrial hemp" generally tracks the existing federal definition of "hemp" and is based on the total concentration of delta 9 THC. In turn, Missouri statutes currently define "marijuana" to exclude industrial hemp. § 195.010(28). In

short, under existing Missouri law, it is legal to cultivate, sell, possess, and transport hemp that is legal under federal law.

In Missouri, the General Assembly enacted HB 2641 in response to Congress's more restrictive definition of "hemp" in the 2025 Farm Bill. Governor Kehoe signed HB 2641 on April 23, 2026. HB 2641 eliminates the current definitions of "industrial hemp" and "illegal industrial hemp" and replaces them with new definitions of "hemp" and "industrial hemp," to be codified in Section 195.900. HB 2641 provides for an effective date of November 12, 2026. However, the Act also creates a contingency plan to employ "if Congress delays the effective date of" the 2025 Farm Bill. In the event of a delay by Congress, HB 2641's central mandate "shall apply to [certain hemp-derived cannabinoid products] only during any period in which such federal restrictions prohibit such products . . . ."

HB 2641 adopts a general definition of "hemp" that tracks the federal definition that will go into effect on November 12, 2026. That definition turns on whether the plant/product contains more or less than 0.3% total THC concentration.

HB 2641 also adopts a new definition of "industrial hemp" that generally follows the federal definition that will go into effect on November 12, 2026. HB 2641 includes "industrial hemp" within the definition of "hemp." HB 2641 generally defines "hemp-derived cannabinoid product" in a way that tracks the federal definition of such term that will go into effect on November 12, 2026. HB 2641 excludes certain "intermediate" and "final" hemp-derived products from the definition of "hemp" under Missouri law. HB 2641 phrases these exclusions in a way that by and large mirrors the federal exclusions that will go into effect on November 12, 2026.

HB 2641 will now statutorily define "marijuana" to have "the same meaning given to the term in Article XIV of the Constitution of Missouri." Further, HB 2641 states "[t]he term

'marijuana' shall not be construed to conform to or be included in the definition of 'hemp' in this section." HB 2641 provides for state regulation of federally illegal "hemp derived cannabinoid products" just like state regulation of marijuana. Specifically, Article XIV, Section 2 of the Missouri Constitution prescribes a scheme for the legalization, regulation, and taxation of marijuana, which is administered by Missouri's Department of Health and Senior Services.

HB 2641 states, in part:

> 3. The cultivation, production, manufacturing, testing, transportation, and retail sale of all hemp-derived cannabinoid products within this state shall be conducted solely by entities licensed by the department under Article XIV of the Constitution of Missouri. Hemp derived cannabinoid products shall be considered marijuana and shall be subject to the legal framework contained in Article XIV of the Constitution of Missouri under which the purchase, possession, consumption, use, delivery, manufacturing, and sale of marijuana is regulated by the department.
>
> 4. The term "hemp-derived cannabinoid product" shall be construed to conform to, and be included in, the definition of "marijuana" under Article XIV of the Constitution of Missouri but shall not be construed to conform to or be included in the definition of "hemp" in this section or in the definition of "industrial hemp" in this section.
>
> 5. Hemp and industrial hemp shall not be considered marijuana and shall not be subject to the legal framework contained in Article XIV of the Constitution of Missouri or in this section. Nothing in this section shall be construed to regulate hemp, industrial hemp, or products that do not fall within the definition of hemp-derived cannabinoid products, and the provisions of this section shall not be construed to conflict with or otherwise preempt the Agriculture Improvement Act of 2018, Pub. L. 115-334, as amended.
>
> . . .
>
> 7. Notwithstanding any provision of law to the contrary, all hemp-derived cannabinoid products are marijuana and shall be subject to the jurisdiction of the department and the office of the attorney general consistent with Article XIV of the Constitution of Missouri and the provisions of this section. The department and the office of the attorney general shall be authorized to enforce the provisions of this section in such a manner as to ensure that no hemp-derived cannabinoid products are cultivated, manufactured, tested, transported, or sold within this state outside of a licensed comprehensive facility, medical facility, marijuana testing facility, or marijuana microbusiness facility, as such terms are defined in Article XIV of the Constitution of Missouri.

### III. Plaintiff's Claims

Plaintiffs' Complaint brings three counts: Count I - HB 2641 Violates the Due Process Clause of the Fourteenth Amendment and is Void for Vagueness, Both Facially and As Applied to Plaintiffs; Count II - House Bill 2641 Violates the Dormant Commerce Clause; and Count III - House Bill 2641 is Preempted by the Farm Bill. Plaintiffs request the Court enter a declaratory judgment that HB 2641 is unconstitutionally vague, both facially and as applied to Plaintiffs, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; enter a declaratory judgment that HB 2641 violates the dormant Commerce Clause of the United States Constitution; enter a declaratory judgment that HB 2641 is expressly preempted by the Agriculture Improvement Act of 2018, Pub. L. 115-334; and enjoin Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from enforcing, implementing, or otherwise giving effect to HB 2641, including Section 195.900.

HB 2641 will not become effective until November 12, 2026. As a result, Plaintiffs have filed a pre-enforcement challenge to the Act.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, Plaintiffs' Complaint "must contain sufficient factual matter, which, when accepted as true and viewed in the light most favorable to the nonmoving party, states 'a claim to relief that is plausible on its face.'" *Perry v. Precythe*, 121 F.4th 711, 714 (8th Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## DISCUSSION

To begin, Defendants argue that several similar lawsuits have been filed across the country and that regardless of the state law at issue, the hemp industry plaintiffs typically allege preemption under the 2018 Farm Bill, a dormant Commerce Clause challenge, and a vagueness challenge, which is nearly identical to what Plaintiffs raise before this Court.

Defendants cite several cases in support of their proposition that federal courts have rejected claims similar to the claims brought by Plaintiffs. These include *Bio Gen LLC v. Sanders*, 142 F.4th 591 (8th Cir. 2025); *Green Room LLC v. Wyoming*, 157 F.4th 1196 (10th Cir. 2025); *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472 (4th Cir. 2025); *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020); *DeLorean 88 LLC v. District of Columbia*, 806 F. Supp. 3d 49 (D.D.C. 2025); and *HW Premium CBD, LLC v. Reynolds*, 742 F. Supp. 3d 885, 899 (S.D. Iowa 2024).

Plaintiffs contend, in part, that HB 2641 inconsistently uses "hemp" and "hemp-derived cannabinoid products" and as a result, it is difficult to parse "due to its use of poorly written, interrelated statutory definitions" and appears to have the practical effect of treating all hemp-derived cannabinoid products as "marijuana" under Missouri law. Plaintiffs state that this will subject them to the regulatory framework for marijuana set forth in Article XIV of the Missouri Constitution. In response, Defendants state that while HB 2641 does not explicitly incorporate the Farm Bill's definitions, the definitions are almost identical to the 2025 Farm Bill.[3]

[3] Regarding the definition of "hemp," compare HB 2641 § 195.900.2(3) with 2025 Farm Bill § 781(2)(1)(A); for exclusions from the definition of "hemp," compare HB 2641 § 195.900.2(3)(a)–(d) with 2025 Farm Bill § 781(2)(1)(C); regarding the definition of "industrial hemp," compare HB 2641 § 195.900.2(5) with 2025 Farm Bill § 781(2)(2); for the definition of "hemp-derived cannabinoid product," compare HB 2641 § 195.900.2(4) with 2025

Insofar as HB 2641 is read to treat federally legal hemp-derived cannabinoid products as "marijuana" and subject them to the Article XIV regulatory framework, Plaintiffs contend Missouri will discriminate against out-of-state businesses by blocking them from selling products that are legal under federal law in Missouri because those products are not cultivated or manufactured in Missouri, as required by Article XIV of the Missouri Constitution and DHSS regulations. However, HB 2641 does not outright prohibit the sale of hemp derived cannabinoid products that are legal under federal law. Instead, Plaintiffs believe it potentially limits whether such products can be sold based on where the product is manufactured or where the underlying hemp is grown.

Under HB 2641, Plaintiffs claim that cultivation, production, manufacturing, testing, transportation, and retail sale of all hemp-derived cannabinoid products in Missouri must be conducted by entities licensed to sell marijuana by DHSS. That would make it illegal to purchase or sell hemp-derived cannabinoid products (including those that meet the federal definition of "hemp") at any location other than a Missouri-licensed marijuana dispensary facility—facilities that can sell only products that are entirely cultivated and manufactured in Missouri. Plaintiffs allege that if this is correct, then HB 2641 discriminates against interstate commerce by insulating Missouri businesses making hemp-derived cannabinoid products from out-of-state competition. Plaintiffs also allege it violates express statutory preemption provisions.

Plaintiffs' Complaint alleges HB 2641 will prohibit members of the MoHemp Trade Association from manufacturing, distributing, and selling hemp-derived cannabinoid products in the state of Missouri because these members do not hold marijuana licenses from DHSS. Further,

---

Farm Bill § 781(2)(3)(A), (E); and for the definition of "intermediate hemp-derived cannabinoid product," compare HB 2641 § 195.900.2(6) with 2025 Farm Bill § 781(2)(3)(B).

the Association's members could not obtain them even if they wanted to because there are no more marijuana licenses available in Missouri.

Plaintiffs also contend HB 2641 will prohibit Lifted Liquids, Inc. from distributing and transporting products into and through Missouri, making it impossible for Lifted Liquids to continue its operations both in Missouri and in other states. Plaintiffs further assert that Lifted Liquids will be forced to reassess and change its shipping patterns because HB 2641 prohibits transportation through Missouri, even if the final destination for hemp-derived cannabinoid products is not in the state.

Finally, Plaintiffs allege MNG 2005, Inc. will no longer be allowed to manufacture federally legal hemp-derived cannabinoid products because HB 2641 requires manufacturers of hemp-derived products to hold a license from DHSS. MNG 2005, Inc., does not hold a DHSS marijuana license and cannot obtain one because DHSS has issued the maximum number of manufacturing licenses and is not accepting new applications. MNG 2005, Inc. will also no longer be able to sell federally legal hemp-derived cannabinoid products because the measure similarly requires that all hemp-derived products be sold in DHSS-licensed marijuana dispensaries. MNG 2005, Inc.'s twelve Missouri stores are not DHSS-licensed marijuana dispensaries.

## I. Preemption

Defendants argue the facts of this case are similar to the facts in *Bio Gen LLC v. Sanders*, 142 F.4th 591 (8th Cir. 2025), where the Eighth Circuit unanimously reversed a preliminary injunction in favor of the plaintiffs and instructed dismissal of the case under Rule 12. 142 F.4th at 606. In *Bio Gen,* the Eighth Circuit rejected Bio Gen's claim that the 2018 Farm Bill is "intended to 'federally protect[] hemp' and coercively mandate nationwide legality." *Id.* at 603. Rather, "[t]he text of the 2018 Farm Bill shows only that Congress wanted to facilitate state legalization

of hemp, if a state wants to. Congress allows states to legalize hemp by removing the biggest hurdle—federal criminalization." *Id.* Accordingly, the 2018 Farm Bill includes only a narrow preemption clause:

> No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

2018 Farm Bill § 10114(b). In other words, "to ensure other states do not become a hurdle to an in-state hemp industry (if the state chooses to legalize hemp), the 2018 Farm Bill prevents other states from interfering with the interstate commerce of hemp." *Bio Gen*, 142 F.4th at 603.

Further, HB 2641 explicitly forecloses any potential conflict with federal law. To avoid a conflict between the Farm Bill's express preemption provision, *see* 2018 Farm Bill § 10114(b), HB 2641 emphasizes that "[n]othing in this section shall be construed to prohibit the interstate commerce of hemp or the transportation or shipment of hemp through this state." HB 2641 § 195.900.6. The Act also provides that "the provisions of this section shall not be construed to conflict with or otherwise preempt the Agriculture Improvement Act of 2018, Pub. L. 115-334, as amended." § 195.900.5. The Court finds that HB 2641 is not preempted by the 2018 Farm Bill. Therefore, Plaintiffs' Count III fails.

## II. Facial and As-Applied Challenges

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015). Comparatively, "[a]n as-applied challenge asks the reviewing court to declare the disputed statute unconstitutional on the facts of the particular case." *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019) (internal quotation omitted). Plaintiffs allege both facial and as-applied challenges.

First, Plaintiffs allege facial unconstitutionality. "A facial challenge requires the challenger to establish that no set of circumstances exists under which the Act would be valid." *Worth v. Jacobson*, 108 F.4th 677, 685 (8th Cir. 2024) (cleaned up). Thus, "[t]o counter a facial challenge[,] . . . all the government must do is identify constitutional applications" of the challenged statute. *Id.* (quoting *United States v. Veasley*, 98 F.4th 906, 910 (8th Cir. 2024)).

HB 2641 enacts five new sections of Missouri law relating to cannabis. As summarized by Defendants, its provisions range from protections for the "identifying information" of customers, HB 2641 § 195.819, to union rights for "[a]ll persons employed in cannabis-related businesses," *see id.* § 1. Plaintiffs' constitutional challenges only relate to one section of the Act: § 195.900. Plaintiffs do not allege that other sections of the Act are unconstitutional. As a result, Defendants argue Plaintiffs have failed to state a claim that HB2641 is facially unconstitutional. The Court agrees. Plaintiffs' Count I allegation of facial unconstitutionality fails.

Further, Defendants argue that because Plaintiffs fail to raise any other constitutional challenge to the entirety of HB 2641, Plaintiffs also fail to adequately state an as-applied challenge. Plaintiffs allege "it is impossible to determine whether HB 2641 will deem their products lawful 'hemp' or unlawful 'marijuana.'" Taking Plaintiffs' allegations as true, it is unclear whether HB 2641 will apply to the products that they sell. It is premature to determine whether it will apply, and if it does, what enforcement or actions, if any, would be taken against Plaintiffs.

This also creates a jurisdictional defect for this pre-enforcement action because it is "an uncontroversial principle of constitutional adjudication[] that a plaintiff generally cannot prevail on an *as-applied* challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally *applied* to him." *McCullen v. Coakley*, 573 U.S. 464, 485 n. 4 (2014) (emphasis in original). The Eighth Circuit and this Court have held the same. *See Phelps-Roper*

*v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017); *Hershey v. Curators of Univ. of Missouri*, 2023 WL 5490186, at *5 (W.D. Mo. Aug. 24, 2023). Plaintiffs have failed to meet this standard based on any action taken by Defendants in interpretation or enforcement of HB 2641. Therefore, their Count I allegation of as-applied unconstitutionality fails, too.

Plaintiffs claim that HB 2641 is unconstitutionally vague as applied to them "because it is impossible to determine whether it will deem their products lawful 'hemp' or unlawful 'marijuana.'" However, it appears Plaintiffs concede that the definitions in the measure "track" the new federal definitions. Further, Plaintiffs do not specify what products they believe are at issue. Defendants argue that as a result, Plaintiffs have failed to put Defendants on fair notice of how the measure is vague as applied to them. The Court finds that HB 2641 is not facially unconstitutionally vague and that Plaintiffs have failed to adequately allege or demonstrate as-applied unconstitutional vagueness or interpretation.

After reviewing the parties' briefs, the Court agrees with Defendants that without successfully alleging facial and as-applied challenges, Count I of Plaintiffs' pre-enforcement challenge fails to state a claim.

### III. Standing

The Court also finds that Plaintiffs do not have standing to bring their claims. A plaintiff bears "the burden of establishing standing as of the time he brought th[e] lawsuit" and the plaintiff must "maintain[] [standing] thereafter." *Carney v. Adams*, 592 U.S. 53, 59 (2020). Without standing, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation omitted). Similarly, "ripeness" is a "threshold matter" that is necessary to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements . . . ."

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (internal quotation omitted). And like standing, ripeness is a prerequisite to federal court jurisdiction. *Nebraska Public Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037–38 (8th Cir. 2000).

In the pre-enforcement context, standing and ripeness impose similar requirements. A claim is unripe if it is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Union Carbide*, 473 U.S. at 580–81. Likewise, to establish standing, a plaintiff must allege "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Turtle Island Foods, SPC v. Thompson*, 725 F. Supp. 3d 963, 983 (W.D. Mo. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Further, in the pre-enforcement context, the "threatened injury must be *certainly impending* to constitute injury in fact . . . ." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (internal quotation marks omitted). An "objectively reasonable likelihood" of future injury is insufficient. *Id.* at 410.

The Complaint's central allegations are that Plaintiffs sell "hemp-derived cannabinoid products," but that Plaintiffs are unsure of whether and how HB 2641 will apply to the products that they sell. Plaintiffs allege that "it is impossible to determine whether HB 2641 will deem their products lawful 'hemp' or unlawful 'marijuana.'" Defendants contend that in making this allegation, Plaintiffs themselves concede that it is impossible to know if Plaintiffs' future "course of conduct" will be "proscribed by" HB 2641 and as a result Plaintiffs lack standing for a pre-enforcement challenge. The Court agrees.

Further, even if Plaintiffs did allege that their prospective sales will be "proscribed by" HB 2641, they must also allege a "credible threat of prosecution thereunder." *Susan B. Anthony List*,

573 U.S. at 159 (internal quotation marks omitted). Plaintiffs provide zero allegations supporting a "credible threat of prosecution." Defendants argue that only two paragraphs in Plaintiffs' Complaint reference the possibility of prosecution. Paragraph 112 simply alleges that "a wide array of law enforcement officials and prosecutors" possess authority to enforce HB 2641. Paragraph 120 alleges that "Plaintiffs face a substantial and intolerable risk of prosecution and ad hoc enforcement by Missouri law enforcement officials and prosecutors once HB 2641 goes into effect."

Defendants contend these paragraphs amount to mere speculation and are insufficient to bring a proper claim. Therefore, they argue that Plaintiffs' allegations should be dismissed.

Defendants also contend Plaintiffs fail to allege any injury-in-fact as to HB 2641's provision for a delayed effective date "if Congress delays the effective date" of the 2025 Farm Bill. Plaintiffs allege that "if Congress delays the effective date of the 2025 Farm Bill Amendments, industry participants will be left to guess whether Section 195.900 is actually operative as to various categories of products under what will be subsection 11 of Section 195.900." But this allegation relies on the wholly speculative assumption that Congress will delay the effective date of the 2025 Farm Bill. Plaintiffs provide no allegation that such a delay is "certainly impending."

Here, Plaintiffs ask the Court to assume an interpretation of HB 2641 that the State has never adopted or enforced against anyone, much less against Plaintiffs. This makes Plaintiffs' claims premature.

***A. Dormant Commerce Clause***

Notwithstanding the above analysis, the Court also individually analyzes Plaintiffs' standing to bring Count II, which alleges violation of the dormant Commerce Clause. The dormant

Commerce Clause prevents "states from enacting laws that discriminate against or unduly burden interstate commerce." *LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018, 1026 (8th Cir. 2020) (internal quotation marks and citation omitted). Thus, the "Commerce Clause prohibits the enforcement of . . . regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (citing *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008)) (internal quotation marks omitted). If "a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to advanc[e] a legitimate local purpose." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 518 (2019) (quotations omitted). Discrimination occurs when a law provides for "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Dep't of Enviro. Quality of Or.*, 511 U.S. 93, 99 (1994).

Plaintiffs' theory is that HB 2641 violates the dormant Commerce Clause because the measure mandates all hemp-derived cannabinoid products sold in Missouri be manufactured there and be made using Missouri-cultivated hemp. However, they raise this challenge only "[i]nsofar as HB 2641 is read to treat federally legal hemp-derived cannabinoid products as 'marijuana' and subject them to the Article XIV regulatory framework." As discussed above, Plaintiffs believe it is impossible to divine whether HB 2641 will treat their products as lawful or unlawful. The doctrine of standing prohibits Plaintiffs from claiming an injury they have failed to show is "certainly impending." Therefore, Count II of Plaintiffs' Complaint fails as well.

Lastly, even if Plaintiffs had standing to allege violation of the dormant Commerce Clause, their claim would fail because HB 2641 provides for the same treatment of those who want to sell hemp and hemp-derived products, regardless of whether they are in-state or out-of-state entities.

Plaintiffs complain about the requirement that all hemp-derived cannabinoid products be manufactured and grown in Missouri and that only those with Missouri licenses may sell in Missouri. However, these restrictions apply equally to Missouri and non-Missouri entities. The fact that no licenses remain to be given out by DHSS equally limits in-state and out-of-state would-be sellers. The Court therefore finds that HB 2641 does not discriminate against out-of-state actors in violation of the dormant Commerce Clause.

## CONCLUSION

Wherefore, for the reasons set forth herein, the Court **GRANTS** Defendants' Motion to Dismiss. The Court finds Plaintiffs have failed to state a claim that HB 2641 Violates the Due Process Clause of the Fourteenth Amendment and is Void for Vagueness, both Facially and As Applied to Plaintiffs; that Plaintiffs have failed to establish standing to bring their claim that HB 2641 Violates the Dormant Commerce Clause; and that HB 2641 is not Preempted by the Farm Bill.

**IT IS SO ORDERED.**
Dated: November 4, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**